**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION**

| | |
|---|---|
| OSF HEALTHCARE SYSTEM, an Illinois Not-for profit corporation, d/b/a ST. FRANCIS MEDICAL CENTER,<br><br>    Plaintiff,<br><br>v.<br><br>DR. JOSEPH J. BANNO and PEORIA DAY SURGERY CENTER, LTD.,<br><br>    Defendants. | Case No. 08-1096 |

## ORDER

On April 23, 2008, Plaintiff filed a Complaint [#1] against the Defendants and on May 13, 2008, Defendants filed a Motion to Dismiss [#10]. On September 24, 2008, Magistrate Judge Byron G. Cudmore filed a well-reasoned Report and Recommendation, recommending that Defendant's Motion be granted in part and denied in part. Both parties submitted objections to the Magistrate's Report and, thereafter, responses to the opposing party's objections. The Court conducted a telephone conference with the attorneys on December 3, 2008 to discuss the current Motion and corresponding Report and Recommendation. This Order follows.

### BACKGROUND

The Magistrate did an admirable job of setting forth the relevant facts, allegations, and standard of review in his Report. This Court will provide a brief

summary of the relevant facts and allegations. For the purpose of this Order, the facts and allegations are taken as true.

Plaintiff, OSF Healthcare System ("OSF"), and Defendant, Peoria Day Surgery Center ("Peoria Day"), both provide outpatient ambulatory surgery. In 1992, OSF and Caterpillar Inc., the largest payer for healthcare services in the Peoria area, entered into a five-year exclusive agreement, which provided that OSF would be the "exclusive, fully-reimbursed provider of hospital services, including outpatient ambulatory surgery, for Caterpillar Members in the Peoria area." (Compl. ¶ 12). Caterpillar members using other facilities were responsible for a co-pay of 30% of the allowed costs (increased to 50% in 2006). In return for the expected high volume of patients, OSF deeply discounted its charges to Caterpillar. (Compl. ¶ 13). The co-pay gave Caterpillar members a substantial financial incentive to choose OSF's facilities for their surgeries, thus ensuring sufficiently high patient volume to make the discounts financially feasible. (Compl. ¶ 14). The exclusivity agreement was renewed in 1997 and 2001, with minor modifications.

The 1992 agreement had two "carve-outs," one of which provided full reimbursement to Peoria Urological Associates, the predecessor to Peoria Day, for urological services, but not for other services performed on Caterpillar members. Caterpillar told Dr. Banno and Peoria Day that it would pay only 70% of costs for non-urological procedures (but 100% of urological procedures), that the co-pay could not be waived, and that Peoria Day "was obligated to bill and attempt to collect" the co-pay. (Compl. ¶ 24). Dr. Banno and Peoria Day knew that Caterpillar members were highly unlikely to use the facilities at Peoria Day if they were obligated to pay a 30 percent

(later 50 percent) co-insurance payment, often amounting to several thousand dollars, when they could have the same surgery performed by the same physician at OSF with no co-pay. (Compl. ¶ 25). In 2004, Caterpillar removed the urological procedure "carve-out" and those procedures were then covered at the 70% level, requiring a 30% co-payment. (Compl. ¶ 32).

The Complaint alleges that Peoria Day, through its surgeons and Dr. Banno, as President of Peoria Day, engaged in a fraudulent scheme by performing non-urological procedures (and, after 2004, urological procedures) on Caterpillar member patients, waiving the co-insurance payment fees, and correspondingly inflating the charges they sent to Caterpillar. (Compl. ¶ 33). OSF alleges that this scheme attracted more Caterpillar member patients than Peoria Day otherwise would have been able to attract and that this scheme denied OSF the benefit of their exclusivity agreement with Caterpillar. (Compl. ¶¶ 34, 36).

OSF pursues three RICO counts in its Complaint. Count I alleges that Dr. Banno, through his association with Peoria Day, an "enterprise", participated in a pattern of racketeering activity (mail and wire fraud) based on fraudulent billing, violating 18 U.S.C. § 1962(c). Count II, also under 18 U.S.C. § 1962(c), alleges that Dr. Banno and Peoria Day, while associated with "ASC Enterprise"[1], engaged in a pattern of racketeering activity (based on the same mail and wire fraud). Count III alleges Peoria Day received income from a pattern of racketeering activity and invested it in the operation of ASC Enterprise, violating 18 U.S.C. § 1962(a). OSF also pursues a state

---

[1] The ASC Enterprise consists of Peoria Day, Peoria Urological Associates, Peoria Urological Investment Partnership and Physicians Advantage, Inc.. (Compl. ¶ 48).

law claim under the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1.

The Defendants moved to dismiss the Complaint. They first argue that all four counts fail to allege fraud with particularity as required under Fed. R. Civ. P. 9(b). Second, Defendants argue that OSF's RICO claims fail to adequately allege that Defendants' supposedly fraudulent conduct proximately caused OSF's alleged injuries. Third, Defendants argue that OSF fails to adequately allege the existence of an association-in-fact enterprise under Count II. Fourth, Defendants argue OSF fails to adequately allege a distinct injury caused by allegedly improper investment of funds under Count III. Lastly, Defendants argue that the Court should decline to exercise supplemental jurisdiction over the state law claim.

In his Report, the Magistrate stated that OSF had alleged sufficient detail of the fraudulent billing scheme with regard to the waived co-pays. However, the Magistrate found that OSF failed to allege how the wrong name and taxpayer identification furthered the fraudulent scheme and therefore, to the extent the RICO fraud claim is based on bills with the wrong name and taxpayer identification number, then the claim should be dismissed without prejudice to replead. The Report found that OSF sufficiently pled proximate cause because OSF was a foreseeable victim of and suffered a direct injury from Defendants' scheme to avoid the co-pay and that calculating damages is not too speculative. The Magistrate found that that OSF failed to adequately allege the existence of an association-in-fact enterprise under Count II and that OSF failed to adequately allege a distinct injury caused by improper investment of funds under Count III and recommended that these Counts be dismissed without

prejudice to replead. The Magistrate recommended that the Court retain supplemental jurisdiction over the state claim.

While the parties filed objections to the Magistrate's Report, neither party objected to the Magistrate's recommendation that Count III of the Complaint be dismissed. Therefore, the Court DISMISSES COUNT III WITHOUT PREJUDICE TO REPLEADING, if OSF believes, in good faith, that they can do so. This Court will now discuss the remaining issues: (1) whether OSF adequately alleged fraud with particularity; (2) whether OSF adequately alleged how the fraudulent conduct proximately caused OSF injuries; (3) whether OSF adequately alleged the existence of an association-in-fact enterprise under Count II; and (4) whether the Court should decline to exercise supplemental jurisdiction over the state law claim.

## DISCUSSION

A complaint should not be dismissed unless it appears from the pleadings that the plaintiff could prove no set of facts in support of his claim which would entitle him to relief. *See Conley v. Gibson*, 355 U.S. 41 (1957); *Gould v. Artisoft, Inc.*, 1 F.3d 544, 548 (7th Cir. 1993). Rather, a complaint should be construed broadly and liberally in conformity with the mandate in Federal Rules of Civil Procedure 8(f).

For purposes of a motion to dismiss, the complaint is construed in the light most favorable to the plaintiff, its well-pleaded factual allegations are taken as true, and all reasonably-drawn inferences are drawn in favor of the plaintiff. *See Albright v. Oliver*, 510 U.S. 266, 268 (1994); *Hishon v. King & Spalding*, 467 U.S. 69 (1984); *Lanigan v. Village of East Hazel Crest*, 110 F.3d 467 (7th Cir. 1997); *M.C.M. Partners, Inc. v.*

*Andrews-Bartlett & Assoc., Inc.*, 62 F.3d 967, 969 (7th Cir. 1995); *Early v. Bankers Life & Cas. Co.*, 959 F.2d 75 (7th Cir. 1992).

**1.      Adequacy of Fraud Allegation**

Federal Rule of Civil Procedure 9(b) requires a plaintiff to state with particularity "all averments of fraud or mistake." Thus, "loose references to mailings and telephone calls in furtherance of a purported scheme will not do." *Jepson, Inc. v. Makita Corp.,* 34 F.3d 1321, 1328 (7th Cir. 1994). The Magistrate found that OSF alleged sufficient detail of a fraudulent billing scheme whereby Defendants waived co-pays in order to increase the number of Caterpillar members having ambulatory surgery performed at Peoria Day. The Court respectfully disagrees and finds that OSF fails to allege fraud with particularity. Therefore, the Court DISMISSES COUNT I WITHOUT PREJUDICE TO REPLEADING. Based on the pleadings and the representations of counsel at the telephone conference on December 3rd, the Court outlines below the areas OSF needs to address in an amended complaint:

(1)     The Complaint fails to make clear that the alleged fraud dealt exclusively with the "facility charges" incurred as part of the ambulatory surgery performed at Peoria Day and not the accompanying physician professional services. The Court advises OSF to clarify this issue in an amended complaint.

(2)     The Complaint fails to sufficiently allege that Peoria Day owed a legal duty to Caterpillar. The allegation "that Peoria Day was obligated to bill and attempt to collect a 30% co-insurance payment from Caterpillar member patients, and that the co-insurance payment could not be waived" fails to specifically allege how or why

Defendants had a legal duty to Caterpillar to charge and/or collect co-payments from Caterpillar members. (See Compl. ¶ 24).

(3) The Complaint fails to allege exactly what fraud was perpetrated on Caterpillar and does not explain how Peoria Day's conduct misled Caterpillar. Further, OSF needs to assert that *someone* (e.g. Caterpillar) relied on Peoria Day's purported misrepresentations. See *Bridge v. Phoenix Bond & Indemnity Co.*, 128 S.Ct. 2131, 2145 (2008) ("Of course, none of this is to say that a RICO plaintiff who alleges injury "by reason of" a pattern of mail fraud can prevail without showing *someone* relied on the defendant's misrepresentations.")

(4) The Court believes that an amended complaint should address whether Peoria Day charged or attempted to collect co-payments from Caterpillar members.

(5) The Complaint fails to assert that OSF's facility charges were lower than Peoria Day's facility charges. The assertion that that Peoria Day's charges "are believed to have been in excess of the deeply discounted rates charged by OSF for the same services" does not satisfy Rule 9(b). (See Compl. ¶ 38). [2]

In addition, the Court respectfully disagrees with the Magistrate's recommendation that OSF's allegations relating to the name of the billing entity and tax identification number be dismissed under 9(b). If OSF is otherwise able to plead fraud with adequate particularity in an amended complaint, the Court finds no reason to delete that portion of the total conduct of the alleged scheme to defraud.

2.     **Adequacy of Proximate Cause Allegation**

---

[2] The Court is aware that discovery has commenced in a companion case, *Peoria Day Surgery Center v. OSF Healthcare,* 06-01236, which currently has a Protective Order in place. The Court would consider a modification to this Protective Order, upon a motion and, if necessary, a hearing, to allow OSF the ability to plead its allegations with more particularity.

While the Court has some concerns as to whether OSF will be able to establish proximate cause, especially in light of *Anza v. Ideal Steel Supply Corp.*, it agrees with the Magistrate's finding that OSF's allegations support proximate cause, at least under the motion to dismiss standard. However, the Court advises OSF to more adequately explain its elements of damages in the amended complaint.

**3.    Adequacy of Association-in-fact Enterprise Allegation**

The Court agrees with the Magistrate that OSF fails to allege an "enterprise." An enterprise is defined as "an ongoing structure of persons associated through time, joined in purpose and organized in a manner amenable to hierarchical or consensual decision-making." *Limestone Development Corp. v. Village of Lemont, Ill.* 520 F.3d 797, 805 (7th Cir. 2008) (internal citation omitted). An "enterprise" is "proved by evidence of an ongoing organization, formal or informal, and by evidence that the various associates function as a continuing unit." *Id.* Moreover, because an "enterprise" is more than a group of people who get together to commit a pattern of racketeering activity, there must be an organization with a structure and goals separate from the predicate acts themselves. *Stachon v. United Consumers Club, Inc.*, 229 F.3d 673, 675 (7th Cir. 2000).

The Complaint explains that the "ASC Enterprise" is composed of Peoria Day, a specialty ambulatory surgery center (Compl. ¶ 3), Peoria Urological Associates, an ambulatory surgery center (Compl. ¶ 4), Peoria Urological Investment Partnership, the owner of Peoria Day's building (Compl. ¶ 5) and Physicians Advantage, Inc., the manager of Peoria Day's business operations (Compl. ¶ 7). The Complaint alleges that Peoria Day and Dr. Banno, while associated with the ASC Enterprise, conducted and participated in the conduct of ASC Enterprise's affairs through a pattern of racketeering

activity. (Compl. ¶ 49).  While the Complaint names the entities and describes what they do, there is no allegation of any kind of organized structure (i.e. how they worked together or that the various associates functioned as a continuing unit.)  See *Limestone Development Corp, Ill.* 520 F.3d at 805.  Therefore, the Court DISMISSES COUNT II WITHOUT PREJUDICE TO REPLEADING.

 1. **Supplemental Jurisdiction over State Law Claim**

This Order dismisses all Counts of the Complaint, without prejudice to repleading.  If OSF chooses not to amend its Complaint, the Court will not exercise supplemental jurisdiction over the state claim.  However, provided OSF files an amended complaint that pleads fraud with sufficient particularity, the Court will retain jurisdiction over the state claim.

## CONCLUSION

For the reasons set forth herein, the Motion to Dismiss [#10] is GRANTED.  OSF has 21 days from the date of this Order to file an amended complaint.

ENTERED this 11th day of December, 2008.

s/ Michael M. Mihm
Michael M. Mihm
United States District Judge