IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS, PEORIA DIVISION

| | |
|---|---|
| OSF Healthcare System, an Illinois not-for-profit corporation, d/b/a Saint Francis Medical Center,  ) ) ) ) | |
| Plaintiff, ) ) | |
| v. ) ) | No.  08-CV-1096 |
| Dr. Joseph J. Banno, Brian Zowin, and Peoria Day Surgery Center, Ltd. ) ) ) ) | |
| Defendant. ) | |

# REPORT AND RECOMMENDATION

BYRON G. CUDMORE, U.S. MAGISTRATE JUDGE:

Plaintiff pursues RICO and state law claims based on Defendants' alleged fraudulent billings to Caterpillar, Inc.. The bills were fraudulent because they allegedly included copay amounts which Defendants were legally required to bill and collect from the patients, but which Defendants in fact had waived, with no intention of collecting them.

This case is before the Court for a Report and Recommendation on Plaintiff's motion to strike Defendants' affirmative defenses of unclean hands and *in pari delicto*, and for a protective order precluding discovery

relevant to those defenses. (d/e 82). For the reasons below, the Court concludes that Defendants fail to state sufficient defenses of unclean hands and *in pari delicto*. The Court therefore recommends that those defenses be stricken. However, the Court recommends that the motion be denied as premature on the protective order Plaintiff seeks.

## Motion to Strike Standard

Under Fed. Rule Civ. P. 12(f), the Court may strike "an insufficient defense". It is often remarked that ". . . the general rule [is] that motions to strike are disfavored. This is because motions to strike potentially serve only to delay." Heller Financial, Inc. v. Midwhey Powder Co., Inc., 883 F.2d 1286, 1294 (7th Cir. 1989). If the affirmative defenses are "sufficient as a matter of law" on their face, or "present questions of law or fact", they should not be stricken. Id.

However, "[a]ffirmative defenses are pleadings and, therefore, are subject to all pleading requirements of the Federal Rules of Civil Procedure." Heller, 883 F.2d at 1294. Affirmative defenses thus must be set forth in "short and plain statement[s] . . . showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); Heller, 883 F.2d at 1294. "[B]are bones conclusory allegations" do not satisfy Rule 8 and are therefore

"insufficient" under Rule 12(f).  Heller, 883 F.2d at 1294 (affirming strike of "bare bones" defenses that offered no "short and plain statement of facts" upon which the defenses were based).

Also instructive are the Supreme Court cases discussing pleading requirements:  Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949-50 (2009) and Bell Atlantic Corp. v. Twombly, 127 S.Ct. 1955, 1964 (2007).  These cases dealt with whether a complaint's allegations satisfied pleading requirements, but their statements seem equally applicable to affirmative defenses, given that affirmative defenses are subject to those same pleading requirements.  Heller, 883 F.2d at 1294; Bank of Montreal v. SK Foods, LLC, 2009 WL 3824668 * 3-4 (N.D.Ill., 2009)(not reported in F.Supp.2d)(analyzing affirmative defenses under facial plausibility standard); In re Mission Bay Ski & Bike, Inc., 2009 WL 2913438 *6 (Bankr. N.D.Ill., 2009)(not reported in F.Supp.2d)(affirmative defenses must meet standards in Iqbal and Bell Atlantic).  Accordingly, the affirmative defense, as pled, must offer enough facts to show that the defense is plausible on its face.  See Ashcroft v. Iqbal, 129 S.Ct. at 1949-50 (2009); Bell Atlantic, 127 S. Ct. at 1965-66.

## Background and Analysis

The factual allegations underlying Plaintiff's claims are that Defendants were legally required to collect copays from Caterpillar, Inc., members but did not do so, in order to remove those members' financial disincentive from using Plaintiff's out-of-network services. Defendants then allegedly billed Caterpillar, Inc. ("Caterpillar") for an amount which included the waived copay, thus falsely representing to Caterpillar that Defendants would bill and collect the copay. This fraud allegedly caused Plaintiff loss of revenue by siphoning off patients that would have otherwise used Plaintiff's in-network services.

Originally, Defendants' disputed affirmative defense stated only that "Plaintiff's claims are barred because it has engaged in action similar to and at least as egregious as that alleged against Defendants in this case." (d/e 74, ¶ 12). Judge Mihm granted Plaintiff's motion to strike that defense because it did not meet Fed. R. Civ. P. 8, but with leave to replead. (9/14/09 text order). Defendants then repled two affirmative defenses at issue here: unclean hands and *in pari delicto*. (*see* d/e 81, 12th and 13th affirmative defenses by Peoria Day).[1]

---

[1]Defendants Banno and Zowin assert identical defenses.

The alleged factual basis for both these affirmative defenses is that Plaintiff engages in the same waiver of copays and bill-inflating of which it accuses Defendants. In particular, Plaintiff allegedly has a "benefit match program" for out-of-network patients. Essentially, Plaintiff, when it is an out-of-network provider, will match the benefits of in-network providers, in order to eliminate the financial incentive for using in-network providers. Plaintiff "routinely waive[s] or writ[es]-off co-payments, deductibles, or other financial penalties that a patient would have incurred by using [Plaintiff's] out-of-network facilities." (d/e 81, p. 25, ¶ 14). Plaintiff allegedly does not inform the payors of this practice and "submit[s] bills to those payors for reimbursement of full out-of-network benefits", thus inflating the bills just as Plaintiff accuses Defendant of doing. (d/e 81, p. 26, ¶ 20). Plaintiff has allegedly waived amounts of more than $600,000 between December 2003 and October 2006 involving over 50 payors, and has aggressively implemented its benefit matching program. (d/e 81, p. 25, ¶¶15-16; p. 27, ¶¶ 22-27). "As [Plaintiff] alleges that [Defendants'] conduct caused a reduction in the volume of patients that in-network providers realize, [Plaintiff's] conduct caused a much more significant volume of patients

anticipated by in-network providers, including [Defendant], to not materialize." (d/e 81, p. 28, ¶ 29).

In the Court's opinion, Defendants' factual allegations do provide sufficient notice of factual basis for the defenses (the "who, what, when, where and how"), but those allegations are legally insufficient to state affirmative defenses of unclean hand and *in pari delicto*. This is because Plaintiff's alleged fraud involves different transactions than those Plaintiff sues about here. Defendants' allegations are, essentially, that "Plaintiffs do it, too", but that is not sufficient to state affirmative defenses for unclean hands or *in pari delicto*.

The equitable defense of unclean hands applies when the plaintiff is "`tainted with inequitableness or bad faith *relative to the matter in which he seeks relief*, however improper may have been the behavior of the defendant .'" Packers Trading Co. v. CFTC, 972 F.2d 144, 149 (7th Cir. 1992)(emphasis added), *quoting* Precision Instrument Manufacturing Co. v. Automotive Maintenance Machinery Co., 324 U.S. 806, 814 (1945). "[T]he maxim requires that the parties shall have acted fairly and without fraud or deceit *in the controversy at issue.*" Id. (emphasis added). The plaintiff's misconduct must have been directed at the defendant and "must 'pertain to

the *subject matter involved* and affect the equitable relations *between the litigants*.'" <u>International Union, Allied Indus. Workers of America, AFL-CIO v. Local</u>, 693 F.2d 666, 672 (7th Cir. 1982)(emphasis added)(quoted cite omitted).

    For example, in <u>International Union</u>, 693 F.2d at 672 (7th Cir. 1982), the Seventh Circuit applied the doctrine of unclean hands to bar an international union's claims for equitable relief against a local union for refusing to cooperate with an administrator, where the international union had acted in bad faith by appointing an administrator with a clear conflict of interest. In <u>Packers Trading Co.</u>, 972 F.2d at 148-50, the Seventh Circuit applied the unclean hands doctrine to bar a trader from recovering reparations where the trader had intentionally taken advantage of the defendant's mistake in that same transaction, and had fraudulently represented to the defendant that he was authorized to conduct that same transaction. In both of these examples the plaintiff's misconduct involved the same events which gave rise to the plaintiff's claims. *See also* <u>American Hosp. Supply Corp. v. Hospital Prods. Ltd.</u>, 780 F.2d 589, 601 (7th Cir. 1986)(unclean hands "is not to be used as a loose cannon, depriving plaintiff of an equitable remedy to which he is otherwise entitled

merely because he is guilty of unrelated misconduct)(plaintiff's false advertising unrelated to plaintiff's breach of contract action); MPC Containment Systems, Ltd. v. Moreland, 2008 WL 1775501 * 5-6 (N.D. Ill. 2008)(striking unclean hands defense where misconduct in obtaining patent was unconnected to plaintiff's claims and had not been directed at plaintiffs)(Illinois law).

The cases cited by Defendants demonstrate this principle. For example, in Packers Trading Co., *supra*, the trader sued to recover on a stock transaction but had engaged in misconduct involving the same transaction. In National Council on Compensation Ins., Inc. v. American Intern. Group, 2009 WL 466802 (N.D. Ill. 2009)(not reported in F.Supp.2d), the plaintiff sued the defendant under RICO for intentionally underreporting premiums to a national worker's compensation reinsurance pool. The defendant in National Council asserted several defenses based on its allegations that the plaintiff and other pool members had essentially engaged in the same misconduct regarding the same pool.[2] In the other Northern District case cited by Defendants, Williams Elec. Games, Inc. v. Barry, 2001 WL 1104619 *17 (N.D. Ill. 2001)(not reported in F.Supp.2d),

---

[2]The District Court in National Council actually struck the affirmative defenses as insufficient for various reasons, including unclean hands and *in pari delicto*.

the District Court denied summary judgment on unclean hands and *in pari delicto* defenses where there was evidence that the plaintiff knew of or turned a blind eye to the *same* events that formed the basis of the plaintiff's claims. In all these cases, the plaintiff's misconduct involved the same events that gave rise to the plaintiff's claims.[3]

The same goes for the *in pari delicto* defense. The defense of *in pari delicto* is the "counterpart legal doctrine" to unclean hands. Byron v. Clay, 867 F.2d 1049, 1052 (7th Cir. 1989); Pieczynski v. Duffy, 875 F.2d 1331, 1333 (7th Cir. 1989). The parties agree that the *in pari delicto* defense as to the RICO claim requires that the plaintiff "(1) as a direct result of his own actions, . . . bears at least substantially equal responsibility *for the violations he seeks to redress*; and (2) preclusion of suit would not significantly interfere with . . . effective enforcement . . . ." Bateman Eichler, Hill Richards, Inc. v. Berner, 472 U.S. 299, 310-11

---

[3] The unreported Fourth Circuit case cited by Defendant also confirms that there must be a connection between the misconduct and the plaintiff's cause of action: the Fourth Circuit in WorldCom, Inc. v. Boyne, 68 Fed.Appx. 447, 451-52 (4th Cir. 2003)(unpublished), upheld the denial of the unclean hands defense where the former employer's alleged misconduct (misrepresentations, freezing stock options, and withdrawing the employee's last paycheck) were not connected to that employer's action seeking to recover a retention bonus that the employee had wrongfully retained.

(1985)(emphasis added).[4] Plaintiff asserts that the standard is somewhat easier for his claims under the Illinois Consumer Fraud Act, requiring "some of the same sort of wrongdoing as the defendant" for the *in pari delicto defense* to apply. (d/e 85, p. 12, citing Williams Elec. Games, Inc. v. Barry, 2001 WL 1104619 *17 (N.D. Ill. 2001)(not reported in F.Supp.2d)).

Under either standard, though, the *in pari delicto* defense applies when the plaintiff's misconduct was a part of the same transaction or events on which the plaintiff sues, just as with the unclean hands defense. The cases cited by Defendants demonstrate this—in all of them the *in pari delicto* defense was proffered regarding the plaintiff's misconduct in relation to the same events that gave rise to the plaintiff's claims against the defendant. *See, e.g.,* Rogers v. McDorman, 521 F.3d 381 (5th Cir. 2008)(plaintiffs allegedly knew about and authorized same check kiting scheme that formed basis of plaintiffs' claims); Official Comm. of Unsecured Creditors of PSA, Inc. v. Edwards, 437 F.3d 1145 (11th Cir. 2006)(debtor corporation was active participant in same Ponzi scheme upon which bankruptcy trustee based its claims); Decatur Ventures, LLC v.

---

[4]Bateman involved federal securities laws, not RICO, but the parties agree that it applies to RICO actions as well. *See* Official Comm. Of Unsecured Creditors of PSA, Inc. V. Edwards, 437 F.3d 1145, 1153-54 (11th Cir. 2006); (d/e 83, p. 12; d/e 85, p. 12). The Court accepts that assumption for purposes of this recommendation.

Stapleton Ventures, Inc., 2006 WL 2290982 (S.D. Ind. 2006)(not reported in F. Supp.2d)(plaintiffs allegedly participated in same RICO scheme on which they sued by signing false loan applications); Honorable v. Easy Life Real Estate Sys., Inc., 182 F.R.D. 553, 560 (N.D. Ill. 1998)(plaintiffs allegedly signed false HUD statements which were part of same fraudulent scheme upon which plaintiffs sued); Williams Elec. Games, Inc. v. Barry, 2001 WL 1104619 (N.D. Ill. 2001)(not reported in F.Supp.2d)(plaintiff allegedly knew of or turned a blind eye to kick-backs which formed basis for plaintiff's claims).

    Here, Plaintiff's claims are based on Defendant's fraudulent billing to Caterpillar for Defendant's outpatient surgical services.  Plaintiff's own fraudulent billings to payors (even to Caterpillar) are different transactions from Defendant's fraudulent billings.  In order for the unclean hands or *in pari delicto* defenses to apply, there would need to be some inference that Plaintiff acquiesced in other otherwise participated in or brought about *Defendant's* fraudulent billings to Caterpillar.  No such inference arises, nor can the Court conceive of how such an inference might arise.

    Imagine, for example, a plaintiff who sues a defendant for a tort.  That defendant could not preclude the suit solely because the plaintiff had

committed that same tort against others. Instead, the plaintiff would simply be liable to those others, just as the defendant would be liable to the plaintiff. Each tortfeasor would remains liable for his or her own misconduct, actionable by those injured. Similarly, here the payors and in-network providers affected by Plaintiff's alleged fraud may have a claim against Plaintiff, but that would not affect the viability of Plaintiff's claim against Defendants for Defendants' fraud.

Defendants urge that the defenses do apply because Plaintiff's misconduct involves the same *controversy*: the practice of waiving copays and inflating bills:

> . . . the true scope and intention of [Plaintiff's] claims and anticipated discovery include not only Caterpillar and the City of Peoria, but also every payor for whom Defendants may have waived co-payments. Thus, the "wrongdoing" or "subject matter" at issue in this case - as defined by [Plaintiff's] own allegations - is the submission of bills to Peoria-area payors (not just Caterpillar and not just contractual exclusive providers) and waiver of co-payments, deductibles or other financial penalties. Or taken from the in-network provider's perspective, the "subject matter" is the siphoning of patients by an out-of-network provider by waiver of co-payments or other out-of-network penalties.

(d/e 85, p. 9).

This Court disagrees. This case is not a systemic challenge to all of Defendants' billing practices, or to the practices of out-of-network providers

in general.  This case is about the billing practices of Defendants to Caterpillar patients for ambulatory outpatient surgeries and how those practices injured Plaintiff.  The rulings in this case may have ramifications for Defendants' other billing practices and for other out-of-network providers in general–many cases do have ramifications beyond the parties–but that does expand the case and controversy now before the Court.  For the defenses of unclean hands or *in pari delicto* to apply, Plaintiff's misconduct must relate in some way to the events that gave rise to Plaintiff's claims.  Plaintiff's own alleged fraudulent billing had nothing to do with Defendants' alleged fraudulent billing.

Thus, the defenses cannot apply based simply on Plaintiff's similar misconduct toward others.  However, Defendants also seem to assert that Plaintiff's waivers and fraudulent billings were, in part, somehow directed at Defendants.  Defendants allege that Plaintiff's conduct has caused it, "as an in-network provider, to lose its patients it reasonably expected to materialize as an in-network provider."  (d/d 85, p. 9).

The Court first notes that no factual allegations support this conclusory allegation.  Defendant does not identify any group of patients who were in-network for Defendant, yet out-of-network for Plaintiff.

Defendant does not allege that any of the fifty-some payors that Plaintiff fraudulently billed were in-network for Plaintiff. Thus, no plausible inference arises from the factual allegations that Plaintiff siphoned off any of Defendants' in-network patients.

Second, even if such an inference arose it would not form the basis for an unclean hands or *in pari delicto* defense because it would still involve separate transactions than those on which Plaintiff sues. The misconduct might be the basis for a counterclaim by Defendants against Plaintiff, but would not be the basis for an affirmative defense of unclean hands or *in pari delicto*. *See, e.g.,* National Council on Compensation Ins., Inc. v. American Intern. Group, 2009 WL 466802 * 6-7  (N.D. Ill. 2009)(striking affirmative defense of "set-off" for plaintiff's alleged similar misconduct against defendant: set-off defense was properly characterized as a permissive counterclaim, not an affirmative defense).

In sum, the affirmative defenses of unclean hands and *in pari delicto* are legally insufficient, even taking all of Defendants' factual allegations as true. The Court therefore recommends that the defenses be stricken. In light of this recommendation, the Court does not address Plaintiff's contention that the unclean hands defense is unavailable in civil RICO

actions or that the unclean hands defense can only be asserted if Plaintiff seeks equitable relief.

In the same motion, Plaintiff also asks the Court to preclude discovery on these affirmative defenses. Defendants assert in their supplemental status report on electronic discovery issues that they "seek information regarding Plaintiff's billing systems, claims processing, and transmitting systems (including the location of stored information and the identification of technology contacts) and its benefit matching program." (d/e 84, ¶ 2). Defendants contend that this information is relevant not only to the affirmative defenses, but also to evaluate Plaintiff's claimed damages and to "the standard of conduct in the Peoria medical community." (d/e 84, para. 9). Defendants posit that if their alleged fraudulent billing is common practice, then that would be relevant to whether Caterpillar was misled.

The Court agrees with Defendants that deciding the discovery disputes in this context would be premature. Striking the affirmative defenses will likely affect discovery–information relevant only to those defenses will be irrelevant to this action. However, the parties have not sufficiently briefed the other possible relevance of the information sought (i.e., as to damages, reliance). And, Defendants seem to contend that

some of the information they seek is just "background information so that they may efficient[ly] tailor their discovery in this action." (d/e 84, ¶ 9). Defendants might also decide to modify the information they seek in light of this report and recommendation. More specifics are required before the Court can determine what discovery is in dispute and whether the discovery is relevant in light of this recommendation. More importantly, this report and recommendation has not yet been ruled upon by Judge Mihm - a ruling necessary to determine the proper scope of discovery.[5]

WHEREFORE, the Court RECOMMENDS that Plaintiff's Motion to Strike and for Protective Order be GRANTED IN PART AND DENIED IN PART (d/e 82). The Court recommends that Defendants' affirmative defenses of unclean hands and *in pari delicto* be stricken. The Court further recommends that Plaintiff's request for a protective order be denied as premature.

Any objections to this Report and Recommendation must be filed in writing with the Clerk of the Court within fourteen days after service of a copy of this Report and Recommendation. See 28 U.S.C. § 636(b)(1).

---

[5]The limitation on discovery imposed by the Court in its text orders of November 23, 2009 and November 24, 2009 remain in effect pending ruling by Judge Mihm on this Report and Recommendation.

Failure to timely object will constitute a waiver of objections on appeal.

<u>Video Views, Inc. v. Studio 21, Ltd.</u>, 797 F.2d 538, 539 (7th Cir. 1986).

See also Local Rule 72.2.

    ENTER:    January 5, 2010

*s/ Byron G. Cudmore*

_____
BYRON G. CUDMORE
UNITED STATES MAGISTRATE JUDGE